Daniel E. Banrett (8579) (dbarnett@parrbrown.com)
Joseph M.R. Covey (7492) (jcovey@parrbrown.com)
Cynthia D. Love (14703) (clove@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Jonathan O. Hafen, Receiver*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as Court-appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>WALTER EVANS, an individual; NYLA EVANS, an individual; and MICHAEL WILLIAMS, an individual,<br><br>Defendants. | **COMPLAINT**<br>(Ancillary Suit – General Order 19-001)<br><br>Case No. _____<br><br>Magistrate Judge Paul Warner |

Jonathan O. Hafen (the "Receiver"), in his capacity as Court-appointed Receiver over the assets of Rust Rare Coin, Inc. ("RRC"), Gaylen Dean Rust, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, the "Receivership Defendants"), hereby alleges, avers, and complains of Defendants Walter Evans, Nyla Evans, and Michael Williams, (collectively, the "Defendants") as follows:

1

**INTRODUCTION**

1. The Receivership Defendants have been operating a classic Ponzi scheme since at least 2008 by soliciting funds from investors in violation of federal commodities and securities laws and using the funds obtained to pay bogus returns to earlier investors.

2. In the course of the Ponzi scheme, the Receivership Defendants made numerous material misrepresentations and omissions, misappropriated investor and other funds, and committed fraud as a commodity pool operator.

3. On November 13, 2018, the Commodity Futures Trading Commission ("CFTC") and the Utah Division of Securities ("DOS") filed a Complaint against the Receivership Defendants in the United States District Court for the District of Utah, Civil No. 2:18-cv-00892-TC-DBP (the "CFTC Action").[1]

4. The CFTC and DOS allege that the Receivership Defendants fraudulently solicited over $200 million from investors who they tricked into believing that the Receivership Defendants were pooling their investments for the purposes of trading physical silver (the "Silver Pool").

5. The CFTC and DOS further allege that there was, in fact, no Silver Pool. Instead, the Receivership Defendants operated a massive Ponzi scheme whereby they used money from new investors to pay fraudulent returns to earlier investors.

6. On November 15, 2018, the Receiver was appointed by this Court to identify, collect, and preserve the assets of the Receivership Estate for the benefit of the estate's creditors, including the hundreds of defrauded investors.

---

[1] The CFTC and DOS filed an amended complaint in the CFTC Action on December 6, 2018.

7. The instant action is brought by the Receiver as part of his continuing duty to: (1) recapture and return investor funds that were sent to the Receivership Defendants and then diverted in the course of their Ponzi scheme, and (2) avoid fraudulent transfers of property belonging to the Receivership Defendants.

## PARTIES, JURISDICTION, AND VENUE

8. Jonathan O. Hafen was appointed November 15, 2018, as receiver for the assets of the Receivership Defendants in the CFTC Action.

9. Walter Evans is an individual recipient of funds from the Ponzi scheme.

10. Nyla Evans is an individual recipient of funds from the Ponzi scheme.

11. Michael Williams is an individual recipient of funds from the Ponzi scheme.

12. This Court has jurisdiction over the subject matter of this action because it is ancillary to the CFTC Action and the appointment of the Receiver by this Court.

13. Defendants have sufficient minimum contacts with Utah that personal jurisdiction is appropriate in this Court. Personal jurisdiction is also proper pursuant to 28 U.S.C. §§ 754, 1692.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 754.

## THE RECEIVER, STANDING, AND STATUS OF CFTC ACTION

15. On November 15, 2018, in the CFTC Action, this Court entered an Order Granting Plaintiffs' Ex Parte Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief, appointing Mr. Hafen as Temporary Receiver.

16. On November 27, 2018, this Court entered an Order Appointing Receiver and Staying Litigation (the "Appointment Order"), appointing Mr. Hafen as permanent Receiver.

17. Pursuant to the Appointment Order, the Receiver was to take control of all property of the Receivership Estate, wherever located.

18. The Receiver was further authorized to initiate suit to recover any and all property of the Receivership Estate in the possession of third parties.

19. Since entry of the Appointment Order, preliminary injunctions have entered as to all Receivership Defendants.

## THE FRAUDULENT PONZI SCHEME

20. For over thirty years, Gaylen Dean Rust ("Rust") owned and operated RRC, a specialty coin shop in Salt Lake City, Utah, dealing in rare coins, precious metals, and other memorabilia.

21. From at least 2008, Rust also operated a massive Ponzi scheme through which he and others defrauded over 430 individuals out of over $200 million.

22. The Receivership Defendants promoted the Silver Pool as an exclusive investment opportunity through which individual investors both contributed money and recruited their friends and family to invest as word spread about the investment returns Receivership Defendants were purportedly generating.

23. Receivership Defendants told investors and prospective investors that they were using the money contributed to the Silver Pool to purchase and store physical silver for investment.

24. Receivership Defendants claimed to use funds contributed to the Silver Pool to purchase physical silver, which was then stored at Brinks storage facilities in Salt Lake City, Utah and Los Angeles, California.

25. Receivership Defendants claimed that they generated profits for investors by selling physical silver held in the Silver Pool when market prices began to decline and, after such a decline, they used the profits from the sale to purchase a larger quantity of silver at a lower price.

26. Through this process, Receivership Defendants claimed they were able to consistently increase the number of ounces of silver held in the Silver Pool and, consequently, increase the value of each investor's share of the Silver Pool.

27. Receivership Defendants further represented that only fifty percent of the silver held in the Silver Pool was traded at any given time, meaning that there was always at least fifty percent of the silver physically held at Brinks facilities.

28. Receivership Defendants told investors that they were able to consistently sell silver at higher prices and purchase silver back at lower prices because they had advance knowledge of when market prices would decline. Specifically, Rust claimed that he received information from an analyst at a large global bank when the bank and other large market participants planned to sell large quantities of physical silver, thereby driving down prices.

29. Receivership Defendants told investors that they could generate high rates of return for the Silver Pool, often representing that they were able to generate consistent returns of twenty to twenty-five percent. Receivership Defendants told some investors that they had consistently generated returns as high as forty percent between 2013 and 2018.

30. Receivership Defendants represented that they had approximately $80 million in physical silver stored at Brinks facilities in Utah and California.

31. But Receivership Defendants' representations were false. Receivership Defendants never traded silver in the manner they described to Silver Pool investors.

32. Receivership Defendants did not store significant quantities of silver at any Brinks facility.

33. Instead, Receivership Defendants misappropriated funds invested in the Silver Pool to make payments to other investors in the Silver Pool in the manner of a Ponzi scheme. Specifically, after receiving a new deposit into the Silver Pool, Receivership Defendants made payments to other investors from the same bank account without ever transferring funds to or from a trading account or otherwise purchasing silver or other precious metals.

34. Additionally, Receivership Defendants transferred money contributed by Silver Pool investors to other entities owned by Rust, including but not limited to R Legacy Entertainment, R Legacy Racing, and R Legacy Investments.

35. None of these other entities owned any trading or similar accounts used to buy or sell silver or other precious metals and none had a legitimate right to funds sourced from Silver Pool investors.

## **DEFENDANT'S INVESTMENT IN THE SILVER POOL**

36. On information and belief, Walter and Nyla Evans invested $180,616 into the Silver Pool.

37. Walter and Nyla Evans and Michael Williams received distributions, either paid to them or to third parties on their behalf by the Receivership Defendants, in excess of the amount invested by Walter and Nyla Evans.

6

38. Receivership Defendants transferred money to Walt and Nyla Evans and Michael Williams with the actual intent to hinder, delay, or defraud creditors.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Transfer/Voidable Transfer)

39. Plaintiff hereby incorporates paragraphs 1 through 38 of the preceding Complaint by reference.

40. Receivership Defendants operated the Silver Pool as a Ponzi scheme.

41. Defendants received payments from Receivership Defendants in excess of the amount invested in the Silver Pool by Walter and Nyla Evans.

42. Because Receivership Defendants operated the Silver Pool as a Ponzi scheme, as a matter of law, the transfers to Defendants were made with the intent to hinder, delay, or defraud creditors.

43. In addition, the transfers to Defendants were made at a time when Receivership Defendants were insolvent, and Receivership Defendants did not receive reasonably equivalent value in exchange for the transfers.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

44. Plaintiff hereby incorporates paragraphs 1 through 43 of the preceding Complaint by reference.

45. Receivership Defendants conferred a benefit upon Defendants when Defendants received payments from the Silver Pool.

46. Defendants know and understand the benefit they received.

47. It would be unjust, under the circumstances, to allow Defendants to retain payments from the Silver Pool in excess of their individual contributions.

**WHEREFORE**, Plaintiff prays as follows:

A. That the Plaintiff be awarded damages against Defendant in an amount to be determined at trial, plus prejudgment and post judgment interest, costs and attorney fees;

B. For such other relief as the Court may allow.

**DATED** this 13th day of November, 2019.

PARR BROWN GEE & LOVELESS, P.C.

 /s/ *Daniel E. Barnett*
Daniel E. Barnett
Joseph M.R. Covey
Cynthia D. Love
*Attorneys for the Receiver*
